HEARD NOVEMBER TERM, 1877.

BLUM vs. EVANS.

Testator having a wife and an only daughter, devised his entire estate, real and personal, to his wife for life, and then added: "I wish my wife to enjoy this estate during her life, and at her death to go to my daughter. Should my daughter die without issue, I wish my entire estate to be divided equally among the H.'s (my wife's family) and the B.'s (my family), one-half" to each. The wife and daughter survived the testator and the daughter survived the wife: *Held*, That the term "should my daughter die without issue" meant should she die without issue in the lifetime of the wife, the tenant for life, and consequently that she, having survived the wife, took an estate in fee simple absolute in the real estate devised.

BEFORE REED, J., AT CHARLESTON, FEBRUARY TERM, 1877.

This was an action by Emma Julia Blum against William J. Evans for specific performance of a contract for the sale of a lot of land in the city of Charleston. The complaint was afterwards amended under an order of the Court, by making some fifty-three persons who were supposed to constitute the two families mentioned in the will of J. Charles Blum, deceased, hereinafter set forth, parties defendant. The case is as follows:

On October 19th, 1874, the plaintiff made a written contract with the defendant to sell to him a certain lot of land in the city of

Charleston. The only objection made by the defendant was as to the title. It appeared by the pleadings that on June 11th, 1857, J. Charles Blum, deceased, made his last will and testament as follows:

"I, J. Charles Blum, do make and declare this to be my last will.

"I give to my beloved wife my entire estate, real and personal, during her lifetime, under the control and management of John Horlbeck and G. W. Dingle, as trustees, substitutions to be made by the Court and approved of by the parties interested.

"I wish my wife to enjoy this estate during her life; at her death to go to my daughter, Emma Julia. Should my daughter die without issue, I wish my entire estate to be divided equally among the Horlbecks, (my wife's family,) and the Blums, (my family,) one-half to the Horlbecks, one-half to the Blums.

"I appoint John Horlbeck, G. Wesley Dingle and my wife, Ester, executors and executrix of this my last will."

That the testator's wife and daughter survived him, and that the wife had died before the said contract was made. The lot of land was part of the real estate of the said testator.

The decree of His Honor the Circuit Judge is as follows:

REED, J. The late Colonel John Charles Blum, being seized and possessed of considerable estate, died in the month of June, 1857.

Being *in extremis*, (as is stated by one of the defendants and not denied,) he made his will, a copy of which is set out in full in the complaint, leaving his widow, Ester, and one only child, his daughter Emma Julia, the plaintiff, then about seven years of age, surviving him. Mrs. Blum, the life tenant, has since died, and her daughter survives.

The questions arise solely on the interpretation of the will, and involve the inquiry whether the executory provision for "the Horlbecks, (my wife's family,) and the Blums, (my family,)" is valid.

The complaint sets out, by name and in families, all the persons of the blood of the Horlbecks, and also all of the blood of the Blums, at the date of the death of the testator and at the date of the will, and all the persons of the blood of both who were in existence at the commencement of this action.

Miss Blum now desires to sell some of the property, as it is said, in order to enable her to renew and repair some of the buildings

which are decayed and out of order, so as to render them tenantable. There is a large property which has depreciated and is depreciating in value, and is unprofitable from want of reparations, and thus does not yield an adequate support for the plaintiff after the payment of insurance and taxes.

Under these circumstances, she has made a contract with the defendant, Evans, to sell a lot and buildings to him; and whilst he is willing to accept the purchase, if she have a right of disposition so as to give him a title in fee simple, doubt having been expressed by counsel as to the interpretation to be put on the will, he requires that her title should be submitted to judicial determination, and he will act in conformity thereto.

There are a great many parties on both sides, I am informed,—in the aggregate sixty-three. There are four or five of the adult defendants who have made default; four have filed answers affirming that, in their view of the will, the plaintiff took a fee simple, defeasible on her dying without issue living at the time of her death, and that at that time those persons who might then be living and who would have been then the next of kin of Mrs. Blum if she had then died, and those persons who might be *then living* who would have been then the next of kin of Mr. Blum if he had *then died*, would be entitled to the whole estate. There are infants whose answers are formal, and they are fully represented. There are          adult defendants who have answered and fully concur in the plaintiff's interpretation.

The subject was fully and at large discussed and argued.

My opinion is that a life estate in the whole property was devised to Mrs. Blum, and a remainder in fee simple absolute, in no sense defeasible, was devised to the plaintiff on the death of Mrs. Blum. The subsequent limitation over on the death of testator's daughter without issue is merely precatory, and, according to Mr. Jarman, (1 Jarman on Wills, 338,) the Courts have of late in such cases insisted upon strict requisition of definiteness in regard both to the subject matter and the objects of the intended trust.

In 6 S. C., 450, the Supreme Court say: "However far the earlier decisions may have gone in construing as a trust the mere expression of a wish, entreaty or confidence attached to a devise or legacy, the inclination of the Courts in more modern times, as Mr. Story, in the second volume of his Equity Jurisprudence, Section 1069, says, 'is not to extend this doctrine of recommendatory trusts.'" Mr.

Jarman, in his work on Wills, (Vol. I, 329,) expresses himself to the like effect:

"Though the language used may convey the wish or desire of the testator as to the use of the property devised, if it does not impose an obligation which can be enforced in a Court of equity, it cannot be held to control or qualify the absolute interest which is conferred by the previous disposition. Where an absolute right is given, words which are to annex a limitation to its pure and uncontrollable exercise must not only be mandatory but in themselves show the manner in which they are to operate, so that the purpose of the testator may clearly appear—how or in what degree he intended to affect the original gift by restrictions entirely inconsistent with the independent enjoyment."

"A mere general expression of affection and favor, even in regard to the children of the testator, has never been held, where by his will the estate in unrestricted terms was given to the wife to convert it into a life interest, unless such disposing intention in their favor is manifest from the words employed."

The requisitions, under these circumstances, are that the provision shall be expressed in words that are imperative "that the subjects should be distinctly designated and the objects clear, definite and certain."

In *Williams* vs. *Williams*, (1 Sim., 357,) the word "family" was used, and the Vice Chancellor said: "The word 'family' is one of doubtful import."

If it be of doubtful import, how can it point out the subjects with clearness, definiteness and certainty?

Now, what can be more indefinite than the objects of this supposed trust? The heir-at-law is the devisee in possession of the legal estate and is protected in his title against vague and uncertain claims.

Mr. Powell, in his valuable work on Devises, at page 348, states the rule as follows: "It is a rule universally adopted in the construction of wills, that whenever there is an unreasonable uncertainty or repugnancy in the disposition made by a testator of his real property, the title of the heir-at-law shall be preferable to all others; because where a Court cannot find words in a will which either expressly or by necessary implication denote the testator's intention beyond the possibility of a doubt, the rules of law regulating descents which are certain must prevail and cannot be super-

seded by an uncertain devise; thus, whether the words of the limit-ation are to be taken as precatory or as proposing a devise, they must indicate to the Court with certainty the intent of the testator."

In my opinion, there is no such certainty in the will before us. The cases cited in the argument show that the word "family" is sometimes construed to mean children, sometimes heirs-at-law, and sometimes has been entirely rejected as without meaning. I cannot reach the conclusion that by such indefinite words the testator in-tended to limit the estate of his only child; at all events, the lan-guage is so vague that it cannot affect the estate. I conclude that the title tendered to the defendant, Evans, by Miss Emma Julia Blum is a good title in fee simple; that the supposed limitation over has no legal validity, and that the purchaser from Miss Blum must complete his contract, and it is so ordered and adjudged.

From this judgment the defendant, Evans, appealed on the ground that His Honor was in error in holding that the limitation over was too vague and indefinite, and that the title tendered to appellant was a good title in fee simple, and that defendant should complete his contract.

*Pressley, Lord & Inglesby*, for appellant :

The questions involved in the case are these:

1st. Are the words, "I wish my entire estate to be equally di-vided," &c., &c., sufficient to create a contingent interest in the Blum and Horlbeck families ? or are they merely precatory, as the Circuit Court has held ?

2d. Does the language employed designate with sufficient dis-tinctness the subjects of the limitation over? or is it so indefinite as to render the limitation over void for uncertainty?

3d. Assuming the limitation over to be good, who are to be com-prehended in the terms, "the Horlbecks, my wife's family," and "the Blums, my family?"

I. It is not necessary that the terms employed in a devise should be direct and imperative. Wishes and requests are sufficient.— 1 Wms. on Ex., m. 89 ; *Dougherty* vs. *Dougherty*, 2 Strob. Eq., 66.

In this State it has been held that the words "it is my wish" will operate as a direct bequest, and will be construed to mean an act of the will rather than an inclination of the mind, unless a dif-ferent construction would produce inconsistency and repugnance.— *Brunson* vs. *King*, 2 Hill Ch., 490.

There is nothing in this will to require a departure from the ordinary meaning of the word. On the contrary, everything indicates that the testator used the words " I wish " as synonymous with " I will." He gives his estate to his wife for life and adds: " I wish my wife to enjoy this estate during her life." In the devise to his daughter he uses the same expression: " I wish the estate at my wife's death to go to my daughter;" and then adds: " Should she die without issue, I wish my entire estate to be divided," &c.

The decree holds that by these words a remainder in fee simple was devised to the daughter. What reason can there be for supposing that the testator used the words " I wish " in a different sense in the next sentence, where he provides for the contingency of his daughter dying without issue?

The cases in which these and similar words have been held precatory are all cases in which property is given absolutely to some person who is by the giver " requested " or " recommended " or " wished " to dispose of that property in favor of another.

II. Assuming, then, that the language employed is mandatory and not precatory, the question to be considered is whether the devise of one-half of the estate to the testator's family and one-half to his wife's family is void for uncertainty. The decree holds that the word family is one of doubtful import, and on that ground declares the remainder over void. We submit that in this the decree is erroneous, and that the word "family," though not a technical word, has a fixed and well-settled meaning, and is synonymous with "next of kin," unless something in the context shows that it is used in a different sense.—2 Jarman, m. 28; Wms. on Ex., 964; *Atkyns* vs. *Wright*, 17 Ves., 261.

Mr. Jarman thus sums up the result of the cases: "It would seem, then," says he, " that a gift to the family, either of the testator himself or of another person, will not be held to be void for uncertainty unless there is something special creating that uncertainty."—2 Jarman, m. 31.

In this case there is nothing to create uncertainty unless it be the addition of the words " the Blums" and " the Horlbecks."

In the case of *Pyot* vs. *Pyot* (1 Ves., 335,) real and personal estate was given to the testatrix's nearest relation of the name of Pyot. Lord Hardwick said: " I think the Pyots describe a particular stock, and the name stands for the stock, and I think the sister is equally entitled to take with the brother, the change of

name by marriage not being material nor the continuance of the name regarded by the testatrix." There is nothing, therefore, in the words above referred to calculated to create any uncertainty as to the word family in the will under consideration.

We submit, therefore, that the plaintiff took a fee simple in her father's estate, defeasible on her dying without issue, and, should that contingency happen, one-half of the estate will go to the next of kin of the testator and the other half to the next of kin of his wife.

The only question about which there is the slightest room for doubt is, whether the estate is given to such persons as were the next of kin of the testator and his wife at their respective deaths or to such persons as will be their next of kin at the plaintiff's death. The discussion of this question we leave for those who may chance to represent the parties in interest when that contingency happens. It is enough at present to cite the cases of *Jones* vs. *Colbeck* (8 Ves., 38,) and *Say* vs. *Creed* (5 Hare, 587,) as authorities for the position that the language used by the testator in the limitation over describes some persons other than the plaintiff; and if that be the case, the decree must be reversed and the bill for specific performance dismissed.

*Memminger*, for respondent:

The testator's will devises his estate to his widow for life, with a remainder in fee to his only daughter. This remainder is now vested in her, the tenant for life having died, and the question before the Court is whether it can be defeated by the words which follow, to wit: "Should my daughter die without issue, I wish my entire estate to be divided equally among the Horlbecks (my wife's family) and the Blums, (my family,) one-half to the Horlbecks and one-half to the Blums."

This limitation over is not an actual devise; it is merely the expression of a wish, and, therefore, falls within that class of devises which are called precatory. In these cases the legal estate is held to be affected with a trust, but the objects and the subject of the trust must be certain, otherwise the estate will be left as it stands at law, unaffected by the trust.

Thus, Judge Story in summing up in his Equity Jurisprudence, § 1070, says: "Wherever the objects of the supposed recommendatory trust are not certain or definite, &c., Courts of equity will not create a trust."

So, Mr. Jarman (1 Jarman on Wills, 338,) says: "We find of late more strict and uniform requisition of definiteness in regard to both the subject matter and objects of the intended trust than can be traced in some of the earlier adjudications."

These writers are fully sustained by the authorities, of which an example may be found in *Dashwood* vs. *Peyton*, (8 Ves., Jr.,) where, at page 41, the Lord Chancellor says: "So as to precatory words, which, in equity, have been held imperative where the *object* and *subject* are *certain;* where, for instance, personal property is given to a person forever, with words of request to that person to give, upon his death, *definite ascertained parts* to *definite ascertained objects*, a trust arises, as it is declared what is to be given, and to whom, which, however, may be considered rather a strong decision."

If we consider the limitation as a legal devise the same rule prevails.

In 1 Powell on Devises, 348, he says: It is a rule universally adopted in the construction of wills, that whenever there is an irreconcilable uncertainty or repugnancy in the disposition made by a testator of his real property, the title of the heir-at-law shall be preferred to all others; because where a Court cannot find words in a will which either expressly or by necessary implication denote the testator's intention beyond the possibility of a doubt, the rules of law directing descents which are certain must prevail and cannot be superseded by an uncertain devise. And this uncertainty, Mr. Powell says, may be either in respect to the thing devised, or to the quantity of interest therein meant to be devised, or to the person described by the devise.

An example of the application of the rule is found in the case of *Counden* vs. *Clerks*, (case cited at same page,) where a devise to the heirs of the testator's name, part and part alike, was held void, because it was uncertain how they should take, for heirs could not take part and part alike.

In either aspect of the case, therefore, whether the limitation over be regarded as a devise or a trust, we have to inquire whether the object or parties to take are definite and certain.

Who are "the Horlbecks, my wife's family, and the Blums, my family"?

Are they to be ascertained at the testator's death, at his widow's death, or at his daughter's?

2. How are they to take—as families, per stirps, or by descent?

3. Are parents, children and grandchildren to take each a share?

4. How are husband and wife to take? and if husband or wife with the name be dead, is the survivor to take, or the issue having the blood but not the name?

5. Shall whole and half blood take equally?

6. Is every one with the blood or name in any degree to take an equal share?

All these uncertainties are fatal unless the word family has acquired such a legal construction as to restore certainty to the description of parties and interests.

But so far is that word from having any such effect, that in *Doe* vs. *Ioinville,* (3 East, 172,) the Court set aside the devise to brother and sister's family for uncertainty and held that the heir-at-law took.

In *Harland* vs. *Trigg,* (1 Brown E. C., 142,) the devise was precatory: "I give to my brother, John, forever, hoping he will continue them (my estates) in the family." The Court held that these words were too indefinite to carry the estate from John and his heirs.

So in *Robinson* vs. *Waddelord,* (8 Sim., 134,) testator gave all the residue of his effects to be equally divided between his two daughters and their husbands and families. The Court rejected the words husbands and families and held that the two daughters took the residue equally and absolutely.

Sometimes the words " my family " are construed to mean children, as in *Barnes* vs. *Patch,* (8 Ves., 604); the devise was to A and B's families, and the children were held entitled to take exclusive of their parents.

In *Wright* vs. *Atkyns,* (1 Turn. & R., 143, 11 Cond. C., 89,) the Court says a remainder to " my family" operates as a devise to my heir-at-law. The Lord Chancellor says: "The Court in its anxiety to find out the meaning of the testator has found out that what he has said has the same meaning as if he had said nothing at all." With respect to these cases he must be a bold man who, sitting in a judicial chair, would attempt to disturb them.

Now, as Miss Blum, the testator's daughter, is the heir-at-law of the testator, the Blum family, and of her mother, the result under this last case is precisely the same as if the limitation be held void for uncertainty.

Again, the words " my family " has been held in a recent case to mean " my children."—*Prigg* vs. *Clark,* cited in Law Review for April, 1877, from late English chancery cases.

The true rule seems to be that stated in 2 Story, § 1071, that the word "family" will answer when it is aided by a context; but the language may be so loosely and indeterminately used as not to amount to a clear designation of persons, and then the precatory words will fail to create a trust.

In the case now before the Court, the loose and indeterminate character of the devise is proved by the large number of parties whom it has been deemed necessary to make, in view of the recent constructions to which the will is subject. The number of defendants is ————.

We conclude, therefore, that the devise over, whether construed as a legal limitation or as a precatory trust, is too indeterminate and uncertain to defeat the preceding legal estate in testator's daughter.

Before the Act of 1853, any limitation over of real estate after the dying without issue of the preceding devisee was held to be too remote and could not take effect.

That Act, now renewed in the Revised Statutes, page , declares that whenever in any will of a testator, etc., an estate, either in real or personal property, shall be limited to take effect on the death of any person without heirs of the body or issue, etc., such words shall not be construed to mean an indefinite failure of issue, but a failure at the death of such person.

Does this Act embrace cases of precatory trusts where there is no legal limitation of an estate? That somewhat depends upon the expediency of extending the scope of the Act to a case like the present.

Was it the wish of the testator to defeat the beneficial estate which he gave to his only daughter in behalf of distant relations and connections whom he did not even know? Here is a large real estate, the possession of which, under such an interpretation, reduces its possessor to actual want, the expenses of protecting the whole property consuming nearly all the income.

Are the precatory words of the testator to be clothed with such force as to be considered as a limitation of an estate upon which the statute is to operate, or are they not rather to be regarded as a flexible expression of a wish which is at the discretion of the real object of the testator's bounty? The operation of the Act of 1853 in every such case as this defeats the intention of the testator, and it would seem a proper mode of construction that the provisions of

the Act should be confined to such cases as are unquestionably subject to its terms.

The Court should endeavor to benefit the chief objects of testator's affections and bounty, and should not defeat their estates merely to transfer the property to distant and unknown claimants upon some remote merely contingent event.

*Simons & Simons,* for respondents:

There is no doubt or question that under the dispositive part of the will, as above stated, there is: First. A life estate given in the whole to the wife. Second. A remainder to the daughter.

There can be no doubt that the daughter takes a fee simple, under the words of the will, although there are no words of perpetuity. The Act of 1824, § 1, p. 28, provides "that no words of limitation shall hereafter be necessary to convey an estate in fee simple by devise, but every gift of land, by devise, shall be considered as a gift in fee simple, unless such a construction be inconsistent with the will of the testator, expressed or implied."

There is nothing in this will which shows any intention of the testator to cut down the estate to less than a fee simple. The provision as to her dying without issue is not intended to modify the estate by the event of her death, but the devolution of the estate may be effected by the event of her death without issue; and if the provision on that subject be effective, it would be equally so whether the estate was a life estate or an estate in fee simple. If we consider the daughter to take a life estate, the provision over would be in the nature of a contingent remainder. If she take a fee simple, the provision would be in the nature of an executory devise.

If it be a contingent remainder, the life estate and the remainder together would constitute the whole fee simple, and the remainder would take effect on the efflux of the particular estate, to wit, the life estate.

If the provision operate as an executory devise, it would operate independently of the fee simple in Miss Blum and in substitution for her.

But it will not be contended by any person that the provision referred to is a contingent remainder. The estate, therefore, after the death of the testator's widow, Mrs. Blum, must be regarded as a *fee simple.* At this point we encounter the proposition that the fee simple, thus given, however, is rendered *defeasible* by the words

"should my daughter die without issue," in which event testator seeks to make another disposition of his estate.

The first answer to this proposition arises out of the interpretation to be put on the words "die without issue."

The testator does not intimate when his daughter's death should take place in order to make the provision of the Horlbecks and Blums effective, and that period is material. The question is to what period is her death without issue referable?

An exegesis of the sentence will show that there were only three possible periods for the death of Emma Julia without issue. The fact of her death at some time was certain; but there were two uncertainties connected with it, to wit, the time, and whether she would have issue.

These periods are:

·1st. Within the testator's lifetime.

2d. Within the lifetime of her mother, the tenant for life.

3d. At any time after the death of the testator and the life tenant.

· In a case like the one under consideration, *Cambridge* vs. *Rous*, (8 Ves., Jr., 23,) Sir Thomas Plumer, Master of the Rolls, (1802) asks: "As it appears, then, that the construction is to depend upon the intention, what is most likely to have been the intention in this case?"

It will be admitted that, except in certain cases, when an absolute rule of law intervenes, the intention of the testator himself must generally be the key to the interpretation of his will. When the intention is against the law, it must be rejected; and when it is confused or inexplicable, it must either be rejected altogether or be interpreted by the rules of law.

It will be remembered that testator's wife and daughter were the two persons who, before all the world, naturally absorbed his affections. He had already given to them the whole of his estate, and he had nothing more to give, and there was no use to make any other provision to prevent his intestacy. Observe, that we are seeking the intention of the testator, which is doubtful on account of the inartificial mode of expression employed in the paper.

Can it be supposed that with these two objects of his affection, the sole claimants of his bounty, he should have limited and restricted the gift to them in favor of classes of persons in and for whom he could not possibly have had either interest or affection,

(and in the construction of his will contended for by the other side,) who might not be born for years after his death, and would be scarcely related to him or his wife?

We can very well understand that the testator desired not to die intestate, and that, therefore, he wished to provide against intestacy. It is manifest that after his wife and child should be provided for he had no special object of his testamentary regard, for he does not specify them, but puts them all together in one general designation of " Blums and Horlbecks." He does not even give or devise, but *wishes* the whole estate to be divided among them.

Now, a sensible and natural inference would be, that his intention was to give his entire estate to his wife for life, and afterwards to his daughter absolutely ; and then if they both should die in his lifetime, or if both survived him, and his daughter should die in his wife's lifetime without issue, then that the " Blums and Horlbecks " should, under such circumstances, divide the estate between them.

There could not be anything more unnatural and repugnant to the presumed affection of a parent tenderly attached to an only daughter, than to give her a large estate, which would require considerable expenditure annually to keep up, and yet clog the gift with such restriction that, in the language of Sir Thomas Plumer in the above cited case, the daughter would have no right to " *touch a shilling or make any use of her share for her own establishment or the use of her family.*"

How horrible a conception it would be that the last thought of an affectionate father should be employed in so tying his bounty to an only daughter as to afflict her life by the existence of possible if not probable hopes, although unexpressed, of a hungry crowd of anxious expectants that she should die in youth, before she might be surrounded by the ties of marriage or the blessings of offspring, or, if she should marry and be a happy parent, that she might lose her children and still die orbate.

. Nor is this all. If a house fell into decay or was blown down in a tempest, she could not sell any part of her property to restore what was injured ; and if in the course of time the property appreciated in value, and, if converted, might realize the highest price in the market, she would still have to retain it to await the event of her death without lineal ties, when, in spite of her natural wish to dispose of her property by will, strangers to her person and her

affections will enter into and enjoy with higher right than hers the estate of her parent.

Indeed, we may use the paraphrase of Chancellor Dargan in *Henderson* vs. *Laurens :* " Well might she say, when she asked her father for bread he gave her a stone, and when she asked for a fish he gave her a serpent."

We are not confined on this point to the argument based on the intention of the testator. We have authority which we will cite briefly.

We hold that the testator intended by the words " should my daughter die without issue," that the death should be either—

1st. Before the death of the testator ; or,

2d. During the life of the first taker, Mrs. Blum.

We propose to show that the words " die without issue" should be construed to mean dying without issue within either of the above periods, and that the " wish" that the estate should be divided is alternative or substitutionary and is not a limitation.

*Pressley* vs. *Davis*, 7 Rich. Eq., 105 : Testator directed his estate to be equally divided among his children, and if any should die or make their exit without lawful issue, then their portions are to be equally divided among the remainder of the aforesaid children : *Held*, That testator meant if any should die without issue in his lifetime, then, etc.

We refer to the following authorities :

1 Roper on Legacies, Section 4, page 606, side margin : " The construction to be put upon a clause directing and limiting over a bequest 'in case of the death of the legatee,' generally : The words in which such a bequest over is expressed neither have, nor by construction have they received, a precise and definite meaning, in which they must be uniformly understood. The expression itself is incorrect, as it applies words of contingency to an event which is certain. No person can with propriety speak of death as a contingent event, which may or may not happen. When, therefore, a testator so expresses himself, the question is what he means by that inaccurate expression. He may perhaps have had some contingency in his mind, as that the legatee was dead at the time he was making his will, or might die before the testator, or before the legacy should be payable, and then the inaccuracy consists in not specifying the period to which the death was to be referred. He might have meant to speak generally of the death whenever it might happen,

and then the contingent or conditional words must be rejected and words of absolute signification must be introduced ; and accordingly, in every instance in which these words have been used, Courts have endeavored to collect from the nature and circumstances of the bequest or the context of the will in which sense it is most likely this doubtful and ambiguous expression was employed. In treating of this subject we must distinguish between immediate bequests with a limitation over in case of the death of the legatees and when such clauses are annexed to legacies given at future periods, as after the determination of preceding estates for lives."

These authorities cover cases where the devise or legacy is " *immediate but defeasible* " in case of the death of the legatee.

If they do not include our case, then it must be included within a class of cases where the legacy is not *immediate but in remainder after an estate for life* or other special period, *with a bequest over in case of the death of the legatee.*—1 Roper on Legacies, 610.

In the case under discussion there is a gift for life to Mrs. Blum—remainder in fee to the daughter—then a bequest over after the remainder to Miss Blum, and it is thus brought under the class we are considering.—1 Roper, 610, 611.

But it may be objected that these cases of gift, *not immediate,* do not apply to Mr. Blum's will, because, although in case of mediate gifts the dying is referred to the death of the person taking the preceding estate, yet the executory provision in Mr. Blum's will is not limited on the contingent words " in case of the death," but on the words "should my daughter die without issue."

These words, however, mean only in case of the death "of my daughter without issue," superadding the words *without issue.*

This addition does not, however, vary the effect of the words nor change their legal signification.

In *Davenport* vs. *Bischopp,* (2 Younge & Collyer, 462,) the words were "depart this life without issue," which are identical with the words " die without issue."

The following is the rubric of the case:

"Testator bequeathed the residue of his personal estate after the decease of his wife upon trust to pay the interest and proceeds thereof to N for life, and after his decease the testator bequeathed the said trust money unto all the children of the said N in equal shares; and in case N should die without leaving lawful issue, the testator gave and bequeathed the said trust money unto his, the

testator's, nieces, M and E, to be equally divided between them, share and share alike. If either of the said nieces should depart this life without issue, then he gave and bequeathed the part or share of her so dying to the survivor of them: *Held*, That the words " depart this life " meant depart this life in the lifetime of either of the preceding tenants for life; consequently that E, having survived the tenants for life, took an absolute interest in one moiety of the residue, though she died without issue in the lifetime of M."

It follows from these cases: 1st. That it is a settled rule upon this subject that if a legacy be given to A, generally, "and in case of his death" to B, these expressions, unexplained by the context of the will, are to be confined to the event of death happening during the life of the testator, so that if the legatee survive him the legacy will immediately vest discharged of the executory bequest to B, and parol evidence that the testator used the words in a different sense cannot be admitted.—1 Roper, 607.

And, 2d. "That where a bequest is not immediate, but in remainder, with an executory limitation 'in case of the death of the legatee,' those expressions will be applied to the period when the remainder takes effect in possession, to wit, the death of the person taking the preceding interest."—1 Roper, 610.

And, 3d. That the addition of the words "without issue" to the terms "in case of the death of the legatee," so as to read "in case of the death of the legatee without issue," will create no difference.—*Davenport* vs. *Bischopp*, 2 Younge & Collyer, 462.

It would follow, therefore, that Miss Blum having survived the testator, and also having survived her mother, the tenant of the precedent interest, to wit, the life estate, the remainder in fee, limited on the life estate, became absolute and indefeasible on the death of her mother.

It is thus shown that it is consistent with obvious and unstrained reasoning on the natural intention of the testator that he designed the provision for the " Horlbecks and Blums " to be alternative or substitutionary in case his daughter should die without issue, either in his lifetime or in the lifetime of his wife.

Admitting, however, for the sake of argument, that this conclusion be erroneous, and that the provision for the " Horlbecks and Blums " was not substitutionary or alternative, but was limited, to take effect at any time when the estate of Miss Blum might be defeated by her death without issue, and not be confined to her death

either in the lifetime of testator or of the tenant of the preceding estate, the question will then arise on the interpretation of the words "should my daughter die without issue, I wish my entire estate to be divided equally between the Horlbecks (my wife's family) and the Blums, (my family,) one-half to the Horlbecks, one-half to the Blums."

We have shown that this will contains two parts, the dispositive and the precatory.

The words "I wish my entire estate to be divided equally" is not dispositive in the connection in which they are used.

"With respect to the words necessary to create a devise, the proper and technical words are 'give and devise,' but any other words which sufficiently shew the intention of the testator to dispose of all or any part of his lands or real estate will be sufficient for that purpose."—6 Cruise Dig., Chap. 10, § 1, p. 171.

. After the unqualified gift to Miss Blum of the remainder in fee, after the life estate to her mother, the mere expression of a *wish* that after her death without issue the property should be divided, etc., can only be regarded as a manifestation of the mental inclination of the testator.

"Words of advice, recommendation or desire do not create a devise, nor will they operate so as to raise a trust in equity, unless the property is *certain* and persons to whom it is given *clearly described;* and even in that case such words are not in general deemed imperative or legatory where they are inconsistent with the antecedent right or interest devised to that person to whom they are addressed; for in such cases the subject matter of the recommendation having been once absolutely devised away, it cannot be presumed that the testator intended to use the subsequent words of recommendation in a legatory sense, which would be to construe his will as inconsistent with itself in one and the same sentence."— 6 Cruise Dig., Chap. 10, § 7, p. 172.

We thus see that the true words of devise, so as to carry an estate, are "give or devise," or other equivalent dispositive words, but that words of advice, recommendation or desire will not create a devise. In some instances such words may, however, create a trust, but under stringent rules.

Thus there are three requisites to raise such a trust:

1. If the words on the whole are sufficiently imperative.
2. If the subject be sufficiently certain.

3. If the *objects or persons to take under the trust* be also certain; not that they should be designated by name, but the context should *clearly and definitely* fix the persons who are to take.—Hill on Trusts, 71–75; *Knight* vs. *Knight*, 3 Beav., 173, 43 Eng. Chan.; *Williams* vs. *Williams*, 1 Sim., 357, 40 Eng. Chan.; *Lesesne* vs. *Witte*, 5 S. C., 450.

In *Knight* vs. *Knight*, we recommend particular attention to the observation of the Vice Chancellor:

"But it is not every wish or expectation which a testator may express, nor every act which he may wish his successors to do, that can or ought to be executed or enforced as a trust in this Court."

And after speaking of the difficulty of ascertaining the intention of the testator, in the great variety of expression and the liability to be mistaken as to intention, the Vice Chancellor adds: "For of late years it has been frequently admitted by Judges of great eminence that by interfering in such cases the Court has sometimes rather made a will for the testator than executed the testator's will according to his intention."

We recommend the special examination of the case of *Williams* vs. *Williams*, (1 Sim., N. S., 40 Eng. Chan., 358,) which is full to the point of the certainty of the objects.

Let us inquire how these precatory words in Mr. Blum's will can operate, if at all.

The testator gave to his widow and daughter his whole estate—the entire fee simple. If the precatory words are imperative, then the trust created is to divide the property equally on the death of Miss Blum without issue among the classes of persons indicated. Where will the legal estate—the fee—reside in that event? The answer is, either in the heirs of testator or in the heirs of Miss Blum; but it cannot be in the heirs of testator, because the fee was given and had vested in Miss Blum. It follows that the fee would be in her heirs and not in the heirs of testator.

One of the requisites, however, necessary to the execution of a trust by precatory words is that "the objects or persons intended to have the benefit of the recommendation or wish be also *certain."—Knight* vs. *Knight*.

Here is a capital difficulty: Who will be "the Horlbecks, (my wife's family,)" "the Blums, (my family)"?

The Vice Chancellor, in *Williams* vs. *Williams*, (above cited, page 371,) says "*the word family is one of doubtful import, and may, according to the context, mean children or heirs or next of kin.*"

If this proposition be true, and it is also maintained and confirmed by many learned Judges, then one of the requisites for the trust fails *in limine.*

There is yet another requisite for the creating such a trust: It must be capable of going into effect within the prescribed period of limitation, that is to say, within a life or lives in being, and twenty-one years and part of a year, so that ever since the case of *Forth* vs. *Chapman* (1 Pr. Will., 665,) it has been held in England and this country that as to real estate, *at least,* a limitation over after a general failure of issue without "any qualifying or restrictive words has always been construed to mean an indefinite failure of issue, which is too remote a contingency, and, therefore, the limitation is void."

This doctrine has been discussed, explained and confirmed in very able arguments, and in a learned note by the editor (Attorney General Bailey) in Bailey's Equity Reports, from page 40 to page 57, inclusive, to which reference is now made.

The provision for the "Horlbecks" and "Blums" may not in strictness, and with technical accuracy, be termed a limitation, but may be properly called an *executory provision;* but, nevertheless, such executory provision of real estate must be so made that if it depend on the failure of issue it must not be on the indefinite failure of issue, but so that the failure of issue must be within the life of the person on the contingency of whose death without leaving *issue living* at the time of the death the executory provision is dependent.

It is beyond all doubt that the executory provision of Mr. Blum's will would be held void, not only for uncertainty, but also for remoteness, without any the least hesitation, except for the A. A. 1853, p. 298; and it now becomes proper to make an exegesis of the Act. It is as follows:

"That whenever, in any deed or other instrument in writing, not testamentary, hereafter executed, or in any will of a testator, hereafter dying, *an estate,* either in real or personal property, shall be limited, to take effect on the death of any person without heirs of the body or issue, or issue of the body, or other equivalent words, such words shall not be construed to mean an indefinite failure of issue, but a failure at the time of the death of such person."

In other words, that the terms "death without heirs of the body or issue, or issue of the body," "shall be equivalent to death without

leaving heirs of the body or issue, or issue of the body living at the time of the death" of the first taker. Or, to simplify the proposition, (by reducing the words,) that "death without issue" shall be equivalent to "death without leaving issue living at the time of the death" of such person, in case that the executory provision be such as will declare *an estate.* There must be an "estate" limited.

The only possible way in which an interest could enure, under Mr. Blum's will, to the "Horlbecks" and Blums (except, as pointed out, by way of trust) would be by executory devise.

We assume this proposition as a postulate. Then it becomes proper to inquire: 1. What is an estate? 2. Is an executory devise "an estate"?

It is easier to ascertain what is not an estate, and that is more conformable to our position, that no estate is limited under Mr. Blum's will to the "Horlbecks" and the Blums.

It appears to us, in the beginning, that it cannot be held that any estate is limited to them, because the testator had but one estate, and he devised that to his wife and daughter in fee simple; there remained nothing more for him to give, and whatever was to go to the "Horlbecks" and Blums was not to go contemporaneously but in substitution for and in place of what he had designed for his wife and daughter. Without a miracle he could not have given away his whole estate in his property in one direction and at the same time have given away the same property in another direction. This would be a physical impossibility, and to hold such a proposition would be an absurdity, for the estate of the Horlbecks and "Blums," if an estate, could only be a fee, and the same fee could not be given away to different persons at the same time.

This conclusion is derived from the reasoning according to the principles of common sense, independently of the dogmas of the schoolmen and the mysteries of an antiquated logic, but we are not without authority to sustain this argument, as we will proceed to show.

Mr. Fearne shows that a similar interest, given by way of executory devise, was *no estate,* but a collateral or mere possibility.— Fearne Contg. Remr., top margin p. 418, side margin 419, *quod vide.*

See also the argument of Mr. Preston, in *Goodright* vs. *Foster*, 1 Taunt., 587: "Contingent and executory interests are sometimes termed contingent and executory estates; this, however, is an

inaccurate expression." Such an interest is not such an estate as
can be sold under execution.—2 Hill Ch., 240-241. That a right
of the character under contemplation is not an *estate*, (*Preston* vs.
*Estates*, 64-66, *ibid*, p. 75,) but only a possibility, (*especially Adams*
vs. *Chaplin*, 2 Hill Ch., 277).

A possibility of reverter is not an estate (per O'Neall, J). If,
then, there be any weight in the learning and authority of the great
masters whom we have cited, we must conclude that there is no
estate limited to the Horlbecks and Blums, but that they have
under the will only a possibility, even although the same be coupled
with an interest, and that hence the exception carved out by the
statute of 1853 cannot apply to Mr. Blum's will and does not ren-
der the words "should my daughter die without issue" equivalent
to "should my daughter die without issue living at the time of her
death," and hence that the words of the will "die without issue"
mean an indefinite failure of issue, and that the contingency on
which the executory provision for the "Horlbecks and Blums"
depends is too remote, and, therefore, the executory provision is
void.

*Pressley, Lord & Inglesby,* in reply:

I. The circuit decree seems to be based on the idea that the
slightest uncertainty in a will is sufficient to set it aside. The rule,
however, is just the reverse.

In *Pyot* vs. *Pyot* (1 Ves., 336,) Lord Hardwicke says: "A de-
vise is never construed absolutely void for uncertainty, but from
necessity."

Mr. Jarman says: "No degree of technical informality  *  *  *
will deter the judicial expositor from diligently entering upon the
task of eliciting from the contents of the instrument the intention
of its author, the faintest traces of which will be sought out."—
1 Jarman on Wills, m. p. 315.

"In modern times, instances of testamentary gifts being rendered
void for uncertainty are of less frequent occurrence than formerly,
which is owing probably, in part, to the more mature state of the
doctrines regulating the construction of wills, which have now
assigned a determinate meaning to many words and phrases once
considered vague and insensible, and in part to the more practiced
skill of the Courts in applying these doctrines. Hence the student
should be cautioned against yielding implicit confidence to many

early cases, in which a gift has been held void for uncertainty, the principle whereof has not been recognized in later times."—*Ibid.*

Referring to the familiar phrase, that the heir is not to be disinherited unless by express words or necessary implication, he says: "This must not be understood to imply that a greater degree of perspicuity is requisite to defeat the title of the heir to the real estate of the testator than would suffice to exclude the claim of the next of kin as the successor to the personalty."—*Ibid;* 2 Redfield on Wills, § 2, p. 394.

II. It was said on the circuit that the Act of 1853 is not applicable to this case because it provides only for cases in which an "estate" is limited to take effect "on the death of any person without heirs," &c., &c., and authorities were cited to show that a contingent remainder was not an "estate."

Should this argument be urged before this Court, it will be enough to say that Blackstone defines an estate in lands to be "such interest as the tenant hath therein;" and Mr. Fearne, in his work on Contingent Remainders, page 1, divides "estates," with regard to the certainty and time of the enjoyment of them, into: 1, Estates vested in possession; 2, Estates vested in interest; 3, Estates contingent, as contingent remainders and such executory devises, future uses, conditional limitations and other future interests as are referred to or made to depend on an event that is uncertain.

The Act of 1853 is a remedial Act and must receive a liberal construction. The interpretation which the appellees seek to place upon it will be tantamount to a repeal of the Act.

III. The case of *Robinson* vs. *Waddelow*, (8 Simons, 134,) relied on in the argument on circuit, and in which the Vice Chancellor rejected the words "and their husbands and families" as incapable of being construed, "is expressly overruled by the case of *Parkeson's Trust*," (40 E. Ch., 242.) "I cannot say," says the Vice Chancellor, "that that case is quite satisfactory to my mind; but I think it is sufficient to say that the decision turned very much on the specialty of the language of the will in that case and could not govern any other case." In the case of *Parkeson's Trusts* it was admitted that the word "family" was a word which, standing by itself, had a fixed meaning, and the only question was whether it became incapable of interpretation when the bequest was to the "parents and their families." The Court refused to reject the words, and held that the testator meant testator's sisters and their

children. The case of *Williams* vs. *Williams* (40 E. Ch., 357,) is cited in the decree as authority for the position that the word "family" is a word of "doubtful import." True, the Vice Chancellor expressly says so. But did he on that account reject the words and declare the bequest void? On the contrary, he examined the will carefully and came to the conclusion that, though the word "family" was one of doubtful import, and might, according to the context, mean children or heirs or next of kin, *in that case* it was equivalent to "of your blood."

. The Vice Chancellor ought, if the position taken by counsel and in the circuit decree be correct, at once to have rejected the entire bequest as uncertain without any attempt to ascertain the testator's meaning.

IV. If the word "family" be construed "next of kin," *Templeton* vs. *Walker* (3 Rich. Eq., 543,) furnishes the rule as to the *proportions* in which they shall take.

V. As to the statements in the decree that Miss Blum desires to sell some of the property to enable her to renew and repair some of the buildings which are untenantable—that the property has depreciated in value and does not yield an adequate support to the plaintiff, we observe:

1st. That there is no evidence to sustain these allegations of the decree, and we do not admit them.

2d. That, if the facts be as stated, they would not warrant this Court in placing a construction upon the will which would not otherwise be placed upon it.

3d. That plaintiff's remedy is by proceedings for the sale of the property and reinvestment of the proceeds subject to the trusts of Mr. Blum's will.

*Cooper* vs. *Denison*, 13 Sim., 390: In this case the bequest was of the income from the residue of the testator's estate for the use of his wife and maintenance of his daughter. In case the daughter survived the wife, then at wife's death to the daughter; and if daughter died before the mother, then at mother's death one-third to go according to mother's will, and two-thirds "to my *other next of kin of my paternal line.*"

All this was in one clause of the will.

The mother survived the daughter.

The Court held that the daughter could not be called next of kin of the "paternal line."

*Lee* vs. *Massey*, 3 DeGex, Fisher & Jones, 113: The testator had but one child—a daughter. He gave the half of his estate to his wife for life and half for the maintenance of her daughter; after the wife's death, all his estate to his daughter, provided should his daughter, Margaret Smith, die without issue, his wife surviving her, "then and in such case I bequeath such estate to my said wife for life, and after her death to my relations, *share and share alike.*" Relations were held to mean next of kin under the Statute of Distributions.

Lord Chancellor Campbell decided that the general rule was well settled in *Bullock* vs. *Downes,* and by it, but for special circumstances, the daughter would take; but it was impossible that by relations in the plural the testator could mean his only daughter, and equally impossible for him to mean that she, a single person, was to take "share and share alike." He must, therefore, mean next of kin under the statute other than the daughter.

April 23, 1878. The opinion of the Court was delivered by

HASKELL, A. J. The testator, after giving to his wife his "entire estate, real and personal, during her lifetime," continues as follows: "I wish my wife to enjoy this estate during her life; at her death to go to my daughter, Emma Julia. Should my daughter die without issue, I wish my entire estate to be divided equally among," &c. The wife is dead—the daughter is alive, "without issue." The question is, what estate does she take under the will of her father? It is admitted that by the words "at her death to go to my daughter" the "entire estate, real and personal," passes to the daughter at the death of the wife in fee. But it is contended that the estate in fee is defeasible upon the daughter dying *at any time* without issue. In the opinion of the Court the time of the death contemplated by the testator when he used the words "should my daughter die without issue" must be during the lifetime of the wife—the life tenant.

It is unnecessary, and, indeed, impracticable, when the amount of business before the Court is unusually great and the time at its disposal limited, to discuss those principles of law and natural reason by which the true intention of the testator in every case is to be ascertained. It is unnecessary, because in this instance the intention of the testator is derived from the application, as was said by Chancellor Wardlaw in *Evans* vs. *Godbold,* (6 Rich. Eq., 39,) of settled rules of construction, framed to define the general intention

of testators and prevent the necessity of bringing the construction of every will into litigation ;" and in this case what we regard as manifestly the actual intention of the testator is fully sustained by the rule.

In that Chapter (L) of 2 Jarman on Wills, which treats of " words referring to death, coupled with a contingency and to what period they relate," on marginal pages 693–4, the following will be found : " Where the two concurrent or alternative gifts are preceded by a life or other partial interest, or the enjoyment under them is otherwise postponed, the rule is to apply the words in question to the event of death occurring before the period of possession or distribution. In such case the original legatee, surviving that period, becomes absolutely entitled."—*Da Costa* vs. *Keir*, 3 Russ., 360 ; *Galland* vs. *Leonard*, 1 Swanst., 161 ; *Evans* vs. *Godbold*, 6 Rich. Eq., 26 ; *Schopper* vs. *Gillam*, 6 Rich. Eq , 83 ; *Anderson* vs. *Smoot*, Speer Eq., 312.

There seems, indeed, to be no real difference between the present case and that of *Vidal* vs. *Verdier*, (Speer Eq., 402,) in which the rule stated was followed. In that case there is a subsequent provision in Peter Bennett's will which is not contained in this will. It directs how the property shall go to the children of the legatee, who occupies the position of Emma Julia in this case, in the event that legatee should die leaving children ; but it had nothing to do with the case, and is only alluded to by the Chancellor as corroborative of the conclusion at which he arrives upon other grounds.

The circuit decree by Chancellor Dunkin and the opinion by Chancellor Harper dispose of every question which could arise in this case. In Bennett's will the sentence upon which the question hinges is " but in case of the death of my nephew, James Felix Vidal, without his leaving a lawfully-begotten child or children," then over. In the present case the words are " should my daughter die without issue." The word " should " is subjunctive, and certainly is equivalent to the words " in the event of " or " in case of."

It is needless to discuss the questions, however, as a mere comparison will show, in a moment, the close resemblance between the wills and the direct application of all that was said in that to the present case. It was held that the gift, after the death of the wife, was an absolute gift in remainder after the estate for life ; that the subsequent provisions amounted only to contingent limitations over on the death of the legatee, and that the expression must be con-

strued to refer to the death of the legatee prior to the period when the remainder takes effect in possession, or prior to the death of the life tenant.

It is an absolute estate subject to defeasance on the happening of a particular event. That contingency had become impossible upon the death of the life tenant. And that, we think, is the right determination in the present case.

In the cases of *Yates* vs. *Mitchell* and *DeHay* vs. *Porcher*, heard together, (1 Rich. Eq., 265,) Chancellor Harper says of *Vidal* vs. *Verdier:* "That case was decided upon this principle, that when a testator, giving in remainder after an estate for life, uses one set of expressions denoting that the remainderman is to take an absolute estate and another set of expressions limiting him to an estate for life with remainder to his issue, and a limitation over in the event of not having issue, this apparent repugnance may be reconciled by restricting the dying without issue to the lifetime of the tenant for life, thus permitting every part of the will to have its proper effect." If he dies during the lifetime of the tenant for life leaving issue, the issue will take as purchasers under the will; if without issue, the limitation over will have effect; but if he survives the tenant for life, the estate is absolute. Such is, in every case, a reasonable and probable intention; and in that case there were circumstances to satisfy me *very* fully that such was the actual intention."

By parity of reasoning the same conclusion must be attained in the case before us.

The Act of 1853 (Rev. Stat., 443,) is applicable to this case and removes any distinction which might otherwise have been made between this and that of *Vidal* vs. *Verdier*. The language of the will and the circumstance that it was dictated by the testator, as it is said, *in extremis*, go very far to show that it was not his intention to dwarf or cripple the estate of his only child for the benefit of a class stated so generally, and, further, to show that when he had given his whole estate to his wife for life and then to his daughter, he regarded himself as having fully disposed of his estate, *unless* a particular contingency should occur, which he next proceeds to contemplate by providing that it should then go over to the Horlbecks one-half and to the Blums one-half—his family and his wife's family.

The indefiniteness of the last provision is evidence of the little importance which it had in the mind of a dying man, who had for the objects of his natural solicitude his " beloved wife " and his infant daughter. The brief language which provides for the wife and child is amplified by the Acts of 1824 and 1853 and is easily capable of construction.

The estate has passed from the trustees and is vested in the daughter. We consider that to be the final disposition contemplated by the testator in the event that his daughter survived her mother. *Cœteris paribus*, " the Court," as was said by the Chancellor in the circuit decree in *Evans* vs. *Godbold* and by Lord Brougham in *Havery* vs. *McLauchlin*, " the Court inclines to a construction which favors the early vesting of estates and against a construction which divests an estate already vested."

The judgment of the Court below is affirmed and the appeal dismissed.

*Willard*, C. J., and *McIver*, A. J., concurred.

---

HEARD NOVEMBER TERM, 1877.